May it please the Court, Travis Eckstrom on behalf of Eugene and Susan Beauregard, and I would like to reserve two minutes for rebuttal. The primary issues on appeal are whether issues of material fact exist as to the Beauregard's intentional interference and takings claims that would merit a remand to the District Court. Indeed, turning to the Beauregard's first claim, the tortious interference claim, we can see that sufficient evidence was presented at the District Court to merit such a remand. Now, the record reflects that the Beauregard's had a valid business expectancy. They purchased the property in Pell for development in 1993. They selected it based on its access to the Seattle and Portland markets and completed a workshop thereon in 2003. Now, when a Washington case relied upon by the defendants in their response brief, Caruso, the Court held that a business expectancy can be evaluated by past business experience and may arise from the lost opportunity to obtain prospective customers. Now, in this case, we see that as to the past business experience, Eugene Beauregard has been marketing architectural sculptured pottery for over 30 years and has since expanded his product line to landscaping and building applications. Now, as to the lost opportunity to obtain prospective customers, we can see that the expanded road approach was critical to the Beauregard's business expectancy. When they completed their workshop in 2003, a neighbor erected fences along their old easement that denied them access to their property. Now, when the Beauregard's filed suit to challenge this action, a Washington court held that the easement that the Beauregard's had on their neighbor's land was actually further west on the property than its current location and that their road was outside of that easement. Now, as a result, the Beauregard's applied to Lewis County to expand their road approach in order to access their property. Now, when the defendants denied this application, the Beauregard's were left without any access to their property. Well, who owned that property, counsel? Your Honor, the Weyerhaeuser owned the property over which the road approach traveled that would have connected to the Beauregard's property. Didn't they need to go to Weyerhaeuser and get permission? Yes, Your Honor, and the record reflects that the Beauregard's did have such a parole agreement with Weyerhaeuser. Indeed, we can see that on each of the letters that Beauregard sent to the Public Works Department, he stated that such a parole agreement existed and copied Weyerhaeuser's forest land use manager on each of those letters. The forest land use manager and Weyerhaeuser never disputed this fact. And indeed, the obligation to determine whether or not such authorization existed, the burden for that was on the county Public Works Department. In fact, the code cited by Lewis County in their response brief states that the Public Works Department has the burden to verify a landowner's proof of authorization. Under that code, the permittee is merely required to submit a signed application with the parcel ID number. There's no requirement anywhere in the code that the permittees submit a written verification. In your view, do you have any administrative remedies left on this issue? As to the tortious inheritance claim? Yes, in terms of resolving all these property disputes. No, Your Honor. The Beauregards submit that they have filed a complaint with Lewis County as to this action. A claim was denied and they have brought suit to challenge this action. And once again, the Public Works Department actually followed the requirements of their code initially. They submitted in a letter to the Beauregards that they would conduct the verification. And they initially followed this procedure by committing to the Beauregards that they would contact Weyerhaeuser and determine the Beauregards' authorization. But they did not follow through with this task. And when the Beauregards followed up inquiring as to what further approval might be required, the defendants never responded. And now critically, the defendants have claimed in their response brief that there is no written verification from Weyerhaeuser, even though the defendants never asked the Beauregards for this piece of evidence. Now, the defendants have also disputed whether or not there was knowledge of this business expectancy. And we can see from the record that in June of 2000, the Beauregards met with the Lewis County Risk Manager and the Deputy Prosecutor to discuss the Beauregards' business plans regarding the workshop located on the property. And then again in 2005, Eugene Beauregard met with the Lewis County Public Works Director where they discussed, quote, in detail that this approach was the only access that could meet the needs of the Beauregards' property. Now, since the defendants had knowledge of the Beauregards' business expectancy, they knew that the approach was critical to this expectancy, and they knew that it was the only access that could meet the needs of their property, the defendants knew with certainty, or at least substantial certainty, that a denial would interfere with the Beauregards' business, and thus any denial would amount to intentional interference. Now, turning to the critical element, I think, in this intentional interference claim, and that is improper means, the Washington Supreme Court has held that tortious interference arises either from improper motives or purpose or the use of improper means. And the defendants in their response brief seem to focus on this improper purpose element that the Beauregards have not relied on. Instead, they rely upon the improper means discussed by the Washington Supreme Court in the Pleas case where the court stated that as a local government, the defendants have a duty to act fairly and reasonably with the Beauregards and that wrongful means will arise if the defendants violate this duty by refusing to grant necessary permits and arbitrarily delaying a project. Now, in this case, the defendants denied the permit for a lack of information as to the right of access to the easement on the neighbor's land and to the warehouse or property. And we've discussed the warehouse or property and why wrongful means were employed as to the denial on that basis. And we just want to point out that as to the denial as to access on the neighbor's land, the record reflects that the Beauregards had explained several times to the defendants that a Washington court had affirmed their right to use an easement on their neighbor's property two months prior to the permit denial, and the defendants have not contested that in their response briefing. Now, turning to the takings claim, Your Honors, the defendants have not disputed that the Beauregards have a property interest in the public record and the value of their property. Instead, they've challenged only whether their conduct amounts to a takings. Now, the Beauregards... Before the district court, did the Beauregards raise this in the district court? No, Your Honor, the Beauregards did not explicitly raise a takings claim. So why should we consider this for the first time on appeal? Yes, Your Honor, this would be the first time it's being raised on appeal. The Beauregards would submit that pro se pleadings are held to a lesser standard than those drafted by attorneys, and indeed this court and the federal circuit have considered issues raised for the first time on appeal of a pro se's claims. And while the Beauregards did not use the word takings in their district court briefing, they did allege a violation of the Fifth Amendment property rights, and since the defendants are state actors, such an allegation could only mean a takings claim. Turning to the... Go ahead with the merits. I'm sorry, Your Honor? Go ahead with the merits. Okay, thank you. Turning to the Beauregards' theory, they would submit that a pro se taking has occurred in this case as extended by the Supreme Court and Brown v. Legal Foundation of Washington, where the Supreme Court found that government action short of real property invasion can't amount to a pro se taking. And in that case, the court and Brown relied upon their earlier decision in Phillips v. Washington Legal Foundation, where they found that the Iolta interest, which became an issue in Brown, was one of the, quote, valuable rights inherent in owning the principal property. So together, Brown and Phillips seemed to show that a pro se taking occurs not simply where government regulates the use of property, but where they act against a specific piece of property and damage or injure a valuable right inherent in that property ownership. Now, the Beauregards' theory in this case is that the placement and failure to remove defamatory statements and the public record concerning their property creates such a pro se taking. And we see from the record that in November 2000, the defendants issued a report stating that the Beauregards' construction on their property violated certain code requirements. Now, the Beauregards filed a complaint with defendants challenging this conclusion, and the defendants neither acknowledged nor responded to this complaint. And then the defendants prepared an internal memorandum stating that the Beauregards' construction was a threat to human life, health, and safety. And then at some time later, but at least before December 2005, they added this to the public record. And then in January 2003, when they conducted a final inspection of the Beauregards' workshop, they did not provide the requested final inspection approval that would have demonstrated that the property was no longer such a threat to human life, health, and safety. And I see that my time is running short. I just want to turn to one critical fact the defendants have raised, and that is that they didn't issue a stop work order. And that's not dispositive in this case. As we analogized in our reply brief, if the city states that a property is contaminated, but then elects for whatever reason not to take an enforcement action against the property owner, that representation remains until the city reports otherwise. And the Beauregards would submit that by placing the statements in the public record that their property was a threat to human life, health, and safety, and then taking no further action, they have acted specifically against a piece of property and injured a valuable right inherent in ownership, and therefore have committed to take concern. I serve my remaining 45 seconds for a vote. Thank you. May it please the Court. My name is John Justice. I represent the Lewis County defendants in this matter. I want to address the claims that have been raised by counsel for the Beauregards in the order that they were raised. Specifically, the first claim, the intentional interference with a business expectancy claim. As this Court is aware, that claim consists of five elements, and the district court ruled that the Beauregards had not presented evidence of each of those elements to support and survive a motion for summary judgment. Specifically, a valid contractual or business expectancy. The Beauregards have not put forth any evidence before the district court that they had anything other than plans that they intended to pursue regarding a concrete ornamental business. There is no evidence in the record of any profit history, either from their own business or from any similar businesses in the area, such that you could rely upon for a valid contractual or business expectancy. Similarly, the only evidence that they placed in the record regarding knowledge of any business expectancy by the Beauregards was that they wrote a letter in 2000 to the county saying they had plans for business in Lewis County. They did not indicate specifically what those plans were in that letter. They did not indicate what the property in PL, what purpose that property had related to their business plans, and there's no evidence that they ever indicated to Lewis County that the road approach, which has become such the focus of this case, was critical to those business plans. Third, intentional interference with the business expectancy. I guess it's important to point out that this is not a tort involving negligent conduct. It is a tort that requires proof of intentional interference with the business expectancy. The only acts that the Beauregards point to in that regard are what they contend was a Lewis County official's failure to continue to make phone calls to Weyerhaeuser to find out if the Beauregards did indeed have authority to have a road approach cross Weyerhaeuser property. Even assuming that that was a burden that that Lewis County official took upon himself, the evidence in the record shows that he did in fact make phone calls. It's not clear from the record whether or not there was ever a connection between Weyerhaeuser and Lewis County in regards to those phone calls, but even if the Lewis County official eventually gave up making phone calls to Weyerhaeuser to find out if the Beauregards did indeed have a right to cross their property, the most that would show is a negligent failure to complete a promise. It would not show any intentional interference with the Beauregards' business expectancy. The fourth factor that the Beauregards had to present evidence on was that there was interference by the defendants based on improper purpose or improper means. There was no evidence of any improper purpose in this case. The correspondence between the Beauregards and Lewis County clearly pointed out that Lewis County needed to confirm that any litigation that was ongoing between the Beauregards and their neighbors did not prevent them from having this wider access road and that they had the right from Weyerhaeuser to place this road on Weyerhaeuser property. That is a proper purpose. The county needs to make sure that it complies with its ordinances in issuing road approach permits. There's no improper means, no evidence of improper means. They relied clearly on a published ordinance in making their decision. They clearly indicated to the Beauregards what was required. Nothing prevented the Beauregards themselves from presenting to the county a written authorization from Weyerhaeuser that their road approach could cross their property. So again, there's no improper purpose or improper means in Lewis County's handling of the road approach permit application. How do we know what the district court found on that? By that I mean the district court's order on this particular count is pretty cursory. It just says here are the elements. It didn't prove them. How do we know what was in the district court's mind? Well, that's a good point, Your Honor. We do not know what was in the district court's mind if you read the decision because it doesn't go through each element. But because this court's review is de novo, what's important is to look at what evidence is in the record to determine if there is evidence in the record of any of these elements. What the district court's mindset was in reaching its decision is not relevant because of the de novo review by this court. The last issue is damages. And there, again, no evidence in the record of damages caused by this road approach permit. And the court, there was an answer in the initial presentation by opposing counsel regarding did the Beauregards challenge this permit issue on any administrative level. There's no evidence that the Beauregards filed any sort of appeal, administrative or in state court, regarding this road approach. Are there any pending administrative actions or potential administrative actions left? There were none pursued, none filed. What is the procedure for filing an appeal from denial of a permit? Well, there's no evidence in the record about the specific administrative level. Well, I just want to know factually what would be the procedure. Under state law, they would have the right under LUPA, Land Use Petition Act, to any denial of a permit for a land use related purpose can be the subject of a LUPA lawsuit. And it's a fast track litigation to resolve land use related permitting issues. And there's no evidence, no allegation from the Beauregards that they pursued any administrative or state court relief related to the road approach permit. The next issue that the Beauregards have brought before this court is regards to taking claim that was clearly and undisputedly not asserted in their complaint. And in the summary judgment procedure, the county moved for summary judgment on all of the Beauregards' causes of action. In response to that motion for summary judgment, the Beauregards did not assert to the district court that they intended to raise a takings claim. They filed their own motion for summary judgment before the district court on liability and did not assert to the district court that they were pursuing a takings claim. The first time that a takings claim was asserted was in their opening brief to this court. Was the assertion of a Fifth Amendment violation adequate? Well, there was certainly no mention or no description of any takings claim to put the defendants on notice that that was being asserted. And even under a pro se standard where you could say that it should be interpreted more liberally, the opportunity for the Beauregards to remedy their failure to assert it in their complaint would have been on summary judgment, and they did not do that. Even if this court were to consider that for the first time on appeal, the Beauregards have not presented any evidence in support of a takings claim. Would that have to have been asserted first in state court? Yes, they would have had to show ripeness, which would have been their opportunity to challenge whatever actions they felt Lewis County did which diminished the value of their property. In this case, they say there were statements placed in an inspection report that they contend were false. They could have asked the state court in some sort of mandamus action to have those statements removed. As Lewis County pointed out to the Beauregards, an inspection report is a public record. They cannot simply unilaterally take material out of a public record that is placed there legally. This was a legal inspection that was done by Lewis County, and if the Beauregards wanted to, they could have sought state court action to have a court order issued having that inspection report removed if there was a basis to do that. They did not do that. In closing, I would ask that the court affirm the district court's grant of summary judgment in this case on all claims, and unless the court has any questions, I have nothing further. Thank you, counsel. Thank you. Rebuttal. Your Honor, a few quick points on rebuttal. Let me ask, what's the status of the property now? Have they sold it? Are they still on it? The record only reflects that they still own the property. There has not been a sale to this point in time, and there's no evidence that there's a pending sale. Turning to the failure to make phone calls point raised by the defendants, that this would essentially be a negligence claim. Once again, it's not the failure to make phone calls that's at issue. It was their intentional denial of the permit under which they did not follow their own authority, and this failure to follow their own authority is, once again, the basis for the improper means. They did not have a means to deny it because they did not follow their own regulations. Turning to the failure to bring a LUPA claim, that would only give rise to a dismissal without prejudice, which at the very least this court should do and not a dismissal on the merits. And turning to the failure to bring a state claim, this court has not stated whether or not a takings claim rightness is prudential or Article III. The Supreme Court has described it as prudential, and just a few years ago in San Remo Hotel, at least four justices called into question the state litigation requirement and stated that it should be overturned in the next appropriate case. Yes, that's a difficult issue on rightness that we're considering in a variety of contexts and exhaustion. That's entirely right. Thank you very much for your arguments. Thank you for your pre-tribal representation. And again, we're sorry we couldn't move the argument, but our scheduling made it impossible. Thank you very much.
judges: B. Fletcher, Thomas, Cjj Conlon (N. Ill.), Dj